IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

GEORGE V. STOKES,                    )
                                     )
              Plaintiff,             )
                                     )
       v.                            )
                                     )          1:10CV935
GLENN A. HARRIS and                  )
CITY OF ROCKINGHAM,                  )
                                     )
              Defendants.            )
                                     )

<u>MEMORANDUM OPINION AND ORDER</u>

BEATY, District Judge.

       This matter is currently before the Court on the Renewed Motion for Summary

Judgment [Doc. #114] of Defendants Glenn A. Harris and City of Rockingham ("Defendants")

as to *pro se* Plaintiff George V. Stokes's ("Plaintiff") claims regarding the actions of Defendants

in arresting Plaintiff on December 8, 2008. Plaintiff's Complaint alleged that Defendant Harris

physically beat Plaintiff and that Defendant Harris was not justified in any of his actions in

stopping Plaintiff's vehicle, arresting Plaintiff, and searching Plaintiff's vehicle. Upon Plaintiff's

requests, this Court granted Plaintiff multiple extensions to file a response to Defendants'

Motion, but Plaintiff never responded. Therefore, the Motion is unopposed. For the reasons

set forth herein, the Court will grant Defendants' Renewed Motion for Summary Judgment.

I.     FACTUAL AND PROCEDURAL BACKGROUND

       The following facts are derived from Defendants' multiple affidavits, a video from

Defendant Harris's patrol car, Department of Motor Vehicle ("DMV") records, and other

documentation submitted with Defendants' Motion for Summary Judgment [Doc. #88],

including a video Plaintiff presented to Defendants as part of a citizen's complaint he filed with the Rockingham Police Department prior to this action. The facts reveal that Defendant Harris stopped Plaintiff's vehicle on December 8, 2008, at approximately 9:26 A.M., due to expired registration tags, fictitious information on the license plate, and a lack of insurance. When Defendant Harris approached the vehicle, Plaintiff identified himself as George Stokes and informed Defendant Harris that he did not have a driver's license or the registration for the car. Defendant Harris returned to his patrol car with Plaintiff's identification information. Through dispatch, Defendant Harris learned that Plaintiff had outstanding arrest warrants and that Plaintiff had "displayed violent tendencies" toward police officers in the past. (Harris Aff. at 2 [Doc. #88-1].) He was accordingly advised to proceed with caution. Based on the outstanding arrest warrants, Defendant Harris decided to arrest Plaintiff, but waited for backup to arrive due to the warnings he received about Plaintiff's past history of violent conduct.

Once Officer Cheyenne Revels arrived, the officers approached Plaintiff's vehicle, issued several traffic violations, and informed Plaintiff he was under arrest due to the outstanding arrest warrants. Plaintiff acted in an agitated and uncooperative manner by refusing to exit the car and threatening to drive away from the scene. After Defendant Harris removed Plaintiff's keys from the ignition to prevent such an occurrence, Plaintiff reluctantly exited the vehicle. Defendant Harris and Officer Revels then attempted to frisk Plaintiff for weapons, but Plaintiff refused to comply and resisted being handcuffed by repeatedly removing his hands from the top of the vehicle and struggling with the officers. Defendant Harris then forced Plaintiff to the ground but was still unable to gain control over Plaintiff. As a result of the continued struggle, Officer

Revels used a taser on Plaintiff,[1] after which the officers were able to handcuff and secure Plaintiff. Once the officers had Plaintiff secured, Defendant Harris conducted a canine sniff of the exterior of the car, and upon his dog's alert, he conducted a full search of the interior of the vehicle. An inventory search of the vehicle was also conducted because it was being towed from the scene. As a result of his search efforts, Defendant Harris discovered some rolling papers and a small amount of marijuana "shake" in the passenger floor board.

Plaintiff's Amended Complaint [Doc. #111] depicted a different chain of events upon giving Defendant Harris his identification. According to Plaintiff, he demanded a reason for the traffic stop and citations, but he contended that Defendant Harris did not respond. After Plaintiff refused to turn over his car keys upon Defendant Harris's demand, Defendant Harris ordered Plaintiff out of the vehicle. Once Plaintiff had exited the vehicle, Defendant Harris allegedly grabbed and held Plaintiff's arms behind his back and began physically searching Plaintiff's pant pockets without explanation and without Plaintiff's consent. Despite not finding anything illegal on Plaintiff's person, Plaintiff alleged that Defendant Harris pushed Plaintiff, used a racial slur, and then tripped Plaintiff to the ground. Plaintiff further alleged that Defendant Harris then jumped on Plaintiff's back and began punching him in the head and face. Plaintiff alleged that he raised his arms to attempt to block Defendant Harris's physical assault, but that he did not actively resist or attempt to flee and that he was not armed. According to Plaintiff, shortly after Defendant Harris stopped beating Plaintiff, another officer arrived on the

---

[1] Officer Revels deployed the taser in a "drive stun manner," which means that the taser was placed directly on Plaintiff's body and no prongs were ejected. (Harris Aff. at 3 [Doc. #88-1].)

scene and tasered Plaintiff, after which Defendant Harris resumed beating Plaintiff. Plaintiff alleged that Defendant Harris's use of force was pursuant to an unwritten department policy. As a result of these alleged beatings, Plaintiff asserted that he suffered a back injury, minor bruises, swelling of his face and mouth, and a loose tooth. Defendant Harris then allegedly lifted Plaintiff from the ground and handcuffed him. According to Plaintiff, Defendant informed him that he was under arrest for resisting arrest.

Plaintiff next alleged that Defendant Harris conducted a search of Plaintiff's vehicle according to unwritten department policy. This search allegedly yielded nothing illegal, but a second search conducted by Defendant Harris led to the discovery of a book of tobacco rolling papers. After all criminal charges arising from this incident were dismissed against Plaintiff, the vehicle was ordered to be returned to him. However, Plaintiff alleged that Defendant City of Rockingham ("Defendant Rockingham") then falsely informed the presiding North Carolina State District Court Judge that the vehicle did not belong to Plaintiff. The order releasing the vehicle to Plaintiff was vacated, allegedly preventing Plaintiff from recovering his vehicle.

Based on the foregoing facts, Plaintiff, *pro se*, filed this action against Defendants on December 6, 2010, alleging various claims of federal constitutional violations under 42 U.S.C. § 1983 and § 1985, state law violations, and state constitutional violations based on the initial encounter between Plaintiff and Defendant Harris and the events that followed. On August 14, 2012, Defendants moved for Summary Judgment [Doc. #88]. Upon motion by Plaintiff, Plaintiff received leave from this Court to amend his original Complaint to add an additional claim of retaliation. However, the Court denied Plaintiff's request for leave to add an additional

defendant. Defendants then filed a Renewed Motion for Summary Judgment [Doc. #114].

After requesting and receiving several extensions to respond, Plaintiff did not respond to

Defendants' Renewed Motion for Summary Judgment. As such, Defendant's motion is

unopposed.

## II.    STANDARD OF REVIEW

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a court shall grant summary

judgment when there exists no genuine issue of material fact and the moving party is entitled to

judgment as a matter of law. Fed. R. Civ. P. 56(a); Zahodnick v. Int'l Bus. Machs. Corp., 135

F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the burden of initially

coming forward and demonstrating the absence of a genuine issue of material fact. Celotex

Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). Once the

moving party has met its burden, the non-moving party must then affirmatively demonstrate the

presence of a genuine issue of material fact which requires trial. Matsushita Elec. Indus. Co. v.

Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1349, 89 L. Ed. 2d 538 (1986). When

making a summary judgment determination, the court must view the evidence and all justifiable

inferences from the evidence in the light most favorable to the non-moving party. Zahodnick,

135 F.3d at 913. However, the party opposing summary judgment may not rest on mere

allegations or denials, and the court need not consider "unsupported assertions" or "self-serving

opinions without objective corroboration." Evans v. Techs. Applications & Serv. Co., 80 F.3d

954, 962 (4th Cir. 1996); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49, 106 S. Ct. 2505,

2510, 91 L. Ed. 2d 202 (1986).

"If a respondent fails to file a response within the time required by this rule, the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice." L.R. 7.3(k). Under Federal Rule of Civil Procedure 56, "[i]f a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e); see Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993) ("[T]he failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion."). However, "in considering a motion for summary judgment, the district court '*must* review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law.' " Robinson v. Wix Filtration Corp., 599 F.3d 403, 409 n.8 (4th Cir. 2010) (quoting Custer, 12 F.3d at 416); see Maryland v. Universal Elections, Inc. 729 F.3d 370, 380 (4th Cir. 2013); Adefila v. Select Specialty Hosp., No. 1:13CV68, 2014 WL 2882931, at *5 n.7 (M.D.N.C. June 25, 2014).

III.    DISCUSSION

As noted above, Plaintiff did not respond to the present Motion despite being given multiple extensions of time in which to do so. Thus, the Court will treat the Motion for Summary Judgment as unopposed and consider the uncontroverted facts established by Defendants' motion. However, to the extent Defendants discussed and attached Plaintiff's video in their Motion, the Court will begin by considering whether Plaintiff's video in and of itself is sufficient to create a genuine issue of material fact. Because the Court finds that Plaintiff's video does not establish a dispute of fact, the Court will then evaluate Plaintiff's

respective federal and state claims based on Defendants' uncontroverted facts.

A.      Plaintiff's Video

To support his claims, Plaintiff relied on an approximately 12-second video which allegedly depicts the events surrounding his arrest on December 8, 2008. (Kelly Aff. Ex. A [Doc. 88-3].) Defendants disputed the authenticity of Plaintiff's video and submitted their own video to the Court depicting the events surrounding Plaintiff's arrest. To the extent the Defendants discussed and submitted Plaintiff's video in their Motion for Summary Judgment, the Court considers whether this video is sufficient to create a genuine dispute of material fact.

Plaintiff originally submitted this video to the Rockingham Police Department with a citizen's complaint he made directly with the department after his arrest. Defendants raised serious concerns as to the authenticity of Plaintiff's video and suggested the video is a fabrication. Although the Court may not weigh the credibility of evidence on a motion for summary judgment, the Court must limit its review of the record to admissible, authentic evidence. "For a non-moving party with the burden of proof at trial, '[m]aterial that is inadmissible will not be considered on a summary-judgment motion because it would not establish a genuine issue of material fact if offered at trial and continuing the action would be useless.'" Sook Yoon v. Sebelius, Civ. A. CBD-08-3173, 2010 WL 4293513, at *3 (D. Md. Nov. 1, 2010) (quoting Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2727 (2010)) (alteration in original); Orsi v. Kirkwood, 999 F.2d 86, 92 (4th Cir. 1993).

Plaintiff has not explained the origins of the video or otherwise offered any method of authentication of the video. The video depicts two white males in black, short-sleeved uniforms

apparently bent over a third, unrecognizable person. One uniformed individual appears to be bald, while the other appears to have reddish hair. The possible third person is not within the camera's view except for an arm that appears to be held by one of the uniformed men. The video is of poor quality, with blurry images which render the faces and most other identifying characteristics of the individuals unidentifiable. A greenish background appears behind the three individuals, and no car is discernible. A time stamp text box in the lower-lefthand corner states "12/8/2008 8:30 AM." The video is accompanied by a sound track of a male's voice swearing, asking "what are you hitting me for" and making threats of suing the apparent assailants. However, there is no other sound aside from this single voice. There are no sounds of scuffling, thrashing, other voices, or the impact of physical blows. The unidentified voice also does not react in time to any of the apparent beatings; there are no exclamations of pain or pauses in the narrative when the video seems to show a fist or arm of an alleged officer falling against the downed, third individual. If accepted as an authentic video, the person who took the video would have to have been standing nearly on top of Plaintiff and the officers in order to capture the picture and voice of the person allegedly being hit. If that in fact had occurred, the camera's microphone would have picked up the sounds of the officers' movements and voices, which are not present on the video.

Notably, even with the limited details gleaned from Plaintiff's video, the video differs in significant respects from Defendants' patrol car video of Plaintiff's arrest. (Kelly Aff. Ex. B [Doc. #88-3].) Defendants' video shows Defendant Harris and Officer Revels wearing long-sleeved black uniforms. Both have dark colored hair. The video does not ever show another

person standing near the officers video-taping the incident. This had to occur in order for Plaintiff's video to clearly capture Plaintiff's voice. The angle at which Plaintiff's video would had to be taken would not have shown a green background; rather, it would have shown Plaintiff's black car behind the officers. In sum, the Court finds that Plaintiff's video is not authentic and cannot be an accurate representation of the events of Plaintiff's arrest.

Procedurally, Defendants have met their burden of providing evidence to support their motion and demonstrating the absence of a material fact. Accordingly, Plaintiff's video would need to provide evidence of a disputed material fact. Since the video is not representative of the events of Plaintiff's arrest as shown by Defendants' patrol car video and other evidence, Plaintiff's video cannot create a dispute of fact as to the events of his arrest. Moreover, because Plaintiff's video is not authentic, the Court cannot and will not consider it as admissible evidence from Plaintiff. Aside from the video, Plaintiff's evidence in the record is largely limited to his own affidavits regarding the events of which he complains.[2] Defendants' evidence in the form of the patrol car's video, submitted as an exhibit with Police Chief Kelly's Affidavit [Doc. #88-3], along with multiple sworn affidavits, satisfy Defendant's burden of showing no genuine issue of material fact exists. Plaintiff has not contested or opposed Defendant's summary judgment evidence. In turn, Plaintiff has not met his burden of showing disputed facts that should be decided by a jury at trial.

---

[2] Plaintiff has also provided documents regarding the car he was driving which fails to prove his ownership of the vehicle, a transcript of a court proceeding discussed in greater detail below, and a statement of questionable authenticity of a witness named Jeffrey Jones (Pl.'s Ex. I [Doc. #49].) None of these documents, however, were submitted in response to Defendants' Motion for Summary Judgment.

Given the evidentiary record and Plaintiff's lack of opposition, the Court finds that no genuine issue of material fact exists that would preclude the granting of Defendants' Renewed Motion for Summary Judgment. As such, the Court now turns to whether Defendants are entitled to judgment as a matter of law on each of Plaintiff's claims.

B.      Plaintiff's Constitutional Claims Under § 1983 and § 1985[3]

In analyzing Plaintiff's claims of constitutional violations and Defendant's Renewed Motion for Summary Judgment, the Court will first consider the application of municipal liability as to Defendant Rockingham and qualified immunity as to Defendant Harris. The Court will then determine whether any of Plaintiff's constitutional claims under § 1983 can overcome the doctrine of qualified immunity as to Defendant Harris. Finally, the Court will consider Plaintiff's § 1985 conspiracy claim.

1.      § 1983 Municipal Liability of Defendant Rockingham

Plaintiff appeared to allege each of his § 1983 claims against both Defendants. Plaintiff also separately alleged a "Monell" claim regarding municipal liability of Defendant Rockingham. In asserting these constitutional violations against Defendant Rockingham, Plaintiff alleged that Defendant Rockingham's unwritten policies and failure to adequately train and supervise its employees led to the deprivation of Plaintiff's constitutional rights.

"[M]unicipal liability [under § 1983] results only 'when execution of a government's policy

---

[3] Throughout his Amended Complaint's listing of legal claims, Plaintiff periodically interjects allegations of constitutional violations beyond those listed in his more specifically articulated causes of action. To the extent Plaintiff repeats constitutional violations within later claims or causes of actions, the Court will construe those as being encompassed by Plaintiff's general § 1983 claims. The Court intends for this section to address any and all of Plaintiff's claims of constitutional violations.

or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.' " <u>Spell v. McDaniel</u>, 824 F.2d 1380, 1385 (1987 4th Cir.) (quoting <u>Monell v. Dept. of Soc. Servs. of City of New York</u>, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037–38, 98 S. Ct. 2018 (1978)).  To prove liability of Defendant Rockingham for acts of its employees, Plaintiff has the burden to "prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of [his] rights." <u>Jordan by Jordan v. Jackson</u>, 15 F.3d 333, 338 (4th Cir. 1994).  "[A] failure to train can constitute a 'policy or custom' actionable under section 1983 only where the 'municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants.' " <u>Id.</u> at 341 (quoting <u>City of Canton v. Harris</u>, 489 U.S. 378, 388, 109 S. Ct. 1197, 1205, 103 l. Ed. 2d 412 (1989)).  Such a claim depends upon proof of "a history of widespread abuse," and typically "[a] single act or isolated incidents are . . . insufficient to establish supervisory inaction upon which to predicate § 1983 liability." <u>Wellington v. Davis</u>, 717 F.2d 932, 936 (4th Cir. 1983).

Plaintiff provided no evidence of city policy, a pattern of widespread abuse, or other indicia of Defendant Rockingham's allegedly insufficient training and supervising practices. Absent any such evidence, Plaintiff has not met his burden to prove Defendant Rockingham should be held liable for any constitutional violations.  Defendant Rockingham is therefore entitled to judgment as a matter of law on all of Plaintiff's § 1983 claims.

2.    § 1983 Qualified Immunity of Defendant Harris[4]

In the present case, Defendant Harris argued both that no constitutional violations occurred and that even if they did, qualified immunity would protect him from liability. "Government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent that 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Washington v. Wilmore, 407 F.3d 274, 281 (4th Cir. 2005) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982).  In determining whether a governmental official is entitled to qualified immunity, the Court must decide "whether a constitutional violation occurred and . . . whether the right violated was clearly established."  Melgar ex rel Melgar v. Greene, 593 F.3d 348, 353 (4th Cir. 2010).  A right is clearly established if at the time of the alleged violation "it would be clear to an objectively reasonable officer that his conduct violated that right."  Brown v. Gilmore, 278 F.3d 362, 367 (4th Cir. 2002).  Pursuant to Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009), this two-step procedure is not an "inflexible requirement," and courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." 555 U.S. at 227, 236, 129 S. Ct. at 813, 818, 172 L. Ed. 2d 565.

---

[4] In Claim 12, Plaintiff alleged Defendants committed a constitutional tort of deliberate indifference. (Pl.'s Am. Compl. at 31 [Doc. #111].)  To the extent that Defendants' subjective intent is relevant in analyzing Plaintiff's claims, the Court assumes Plaintiff intended for this allegation to rebut a claim of qualified immunity. Regardless, because Plaintiff provided no evidence supporting that either Defendant acted with indifference or malice, this claim is unsupported by evidence.

In reviewing Plaintiff's claims, the Court finds it helpful to consider the applicability of qualified immunity to each claim, beginning with the step of considering whether an objectively reasonable officer would have known Officer Harris's conduct violated a clearly established constitutional right. With this in mind, the Court now turns to each of Plaintiff's constitutional claims.

### 3. Plaintiff's Eighth Amendment Claims

Plaintiff contended that Defendant Harris used excessive force by intentionally and deliberately beating Plaintiff. Plaintiff also alleged that this excessive force, along with the many other constitutional violations he asserted, constituted cruel and unusual punishment. However, the Eighth Amendment Cruel and Unusual Punishment Clause " 'was designed to protect those convicted of crimes,' and consequently the Clause applies 'only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions.' " Whitley v. Albers, 475 U.S. 312, 318, 106 S. Ct. 1078, 1083–84, 89 L. Ed. 2d 251 (1986), *abrogated on other grounds by* Wilkins v. Gaddy, 130 S.Ct. 1175 (2010) (quoting Ingraham v. Wright, 430 U.S. 651, 671 n.40, 97 S.Ct. 1401, 1412 n.40 (1977)) (internal citations omitted). In other words, such a claim would properly be brought against the State for punishment given post-conviction, not against the Defendants here for their actions in arresting and charging Plaintiff. Thus, Plaintiff's Cruel and Unusual Punishment claim is misplaced and summary judgment for Defendants is proper.

The Court now turns to what Plaintiff has identified as an Eighth Amendment claim of excessive force. Here, Plaintiff focused his contentions on the conduct of Defendant Harris and

how Plaintiff's arrest was carried out.  Although Plaintiff identified the officer's conduct as an Eighth Amendment violation, the more appropriate inquiry is whether or not the use of force in Plaintiff's case was reasonable under the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 395, 109 S. Ct. 1865, 1871, 104 L. Ed. 2d 443 (1989) ("[A]ll claims that law enforcement officers have used excessive force . . . should be analyzed under the Fourth Amendment and its 'reasonableness standard' . . . ."). "Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Id. at 396, 109 S. Ct. at 1871–72. In analyzing the force used in a particular situation, the Court considers the objective reasonableness of the officer's use of force in light of the circumstances, weighing the individual's interests against such intrusions against the State's countervailing interests, including the threat to officer and public safety. E.g. Brockington v. Boykins, 637 F.3d 503, 506 (4th Cir. 2011); Turmon v. Jordan, 405 F.3d 202, 207 (4th Cir. 2005).

In the present case, upon checking Plaintiff's identification with the police department's dispatch, Defendant Harris discovered that Plaintiff had outstanding arrest warrants, a criminal record, and a history of aggressive, violent conduct toward police officers.  As already more thoroughly highlighted above, Plaintiff was uncooperative and agitated throughout the encounter.  He repeatedly resisted being frisked, handcuffed, or brought under control. In light of such circumstances, an objective police officer would not believe that forcing Plaintiff to the ground to gain control over Plaintiff—as Defendant Harris did here—would violate a clearly established right of Plaintiff.  Thus, the Court finds that Defendant Harris is entitled to qualified

immunity on this claim.

4.    Plaintiff's Fourth Amendment Claims

Plaintiff's Fourth Amendment claims assert that he was falsely arrested and illegally detained.  Also pursuant to the Fourth Amendment, Plaintiff claims that his vehicle was illegally searched and seized.  A police officer may stop a vehicle for traffic violations, and if the police officer develops reasonable suspicion of other criminal activity during the course of addressing the initial traffic violation, the police officer may detain the individual in order to dispel the suspicion.  United States v. Branch, 537 F.3d 328, 335–36 (4th Cir. 2008).  An officer may make a warrantless arrest if supported by probable cause.  E.g. United States v. Humphries, 372 F.3d 653, 657 (4th Cir. 2004).  The existence of probable cause depends on the totality of the circumstances.  Id.; Brown v. Gilmore, 278 F.3d 362, 367 (4th Cir. 2002).  "Two factors govern the determination of probable cause in any situation: 'the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct.' " Id. at 367–68 (quoting Pritchett v. Alford, 973 F.2d 307, 314 (4th Cir. 1992)).

Turning to Plaintiff's claims that Defendant Harris illegally detained and falsely arrested Plaintiff, the Court considers the facts known to Defendant Harris when he arrested Plaintiff.  As noted above, Defendant Harris initially stopped Plaintiff due to expired registration tags, false information on the license plate, and a lack of insurance for the vehicle.  This information was sufficient to create reasonable suspicion, and Defendant Harris was thus justified in stopping Plaintiff's vehicle long enough to investigate and issue these possible traffic citations.  During the course of this initial stop, Defendant Harris learned that Plaintiff's license was revoked and

15

Plaintiff had outstanding arrest warrants.

Plaintiff has not disputed these facts or demonstrated that these facts constituted a violation of a clearly established constitutional right so as to bar qualified immunity. The Court, nonetheless, finds that based upon the totality of the circumstances, a reasonable officer would have believed the traffic stop was proper given the observed traffic violations and that the subsequent arrest was supported by, at a minimum, the outstanding arrest warrants. Accordingly, Defendant Harris is entitled to qualified immunity with respect to Plaintiff's stop, detention, and arrest.

Plaintiff also contends that the warrantless searches and seizure of his vehicle violated his constitutional rights. The Fourth Amendment protects an individual against searches when the individual has a reasonable expectation of privacy in the area searched. E.g. United States v. Castellanos, 716 F.3d 828, 832 n.3 (4th Cir. 2013) *cert. denied*, 134 S. Ct. 832, 187 L. Ed. 2d 692 (U.S. 2013). "Individuals have a reduced expectation of privacy in motor vehicles due to the high level of regulation to which they are subject." United States v. Rusher, 966 F.2d 868, 874 (4th Cir. 1992). A criminal defendant challenging a search has the burden to prove he had a reasonable expectation of privacy in the area to be searched. Id. "When attempting to determine whether a defendant has a reasonable expectation of privacy in property that is held by another, we consider such factors as 'whether that person claims an ownership or possessory interest in the property, and whether he has established a right or taken precautions to exclude others from the property.'" Castellanos, 716 F.3d at 833–34 (quoting United States v. Rusher, 966 F.2d 868, 875 (4th Cir.1992)).

Here, although Plaintiff was driving the car and appeared to assert ownership of the vehicle, Defendants' evidence on the motion for summary judgment indicates that Plaintiff was not the legal owner of the car at the time of his arrest. (Kelly Aff. at 2-3 and Ex. C [Doc. #88-3].) The DMV records submitted by Defendants show that the title and registration of the vehicle were not in Plaintiff's name. Moreover, the car was not insured and Plaintiff's license was revoked. Without insurance or a license to operate the vehicle, Plaintiff could not be in lawful possession of the vehicle at the time of the searches and seizure of the vehicle. See United States v. Ferguson, 667 F. Supp. 2d 567, 572 (M.D.N.C. 2009) *aff'd*, 395 F. App'x 77 (4th Cir. 2010). Cf. United States v. Wellons, 32 F.3d 117, 119 (4th Cir. 1994) ("[A]ppellant, as an unauthorized driver of the rented car, had no legitimate privacy interest in the car, and therefore, the search of which he complains cannot have violated his Fourth Amendment rights.") United States v. Hargrove, 647 F.2d 411, 412 (4th Cir. 1981) (driver of an allegedly stolen vehicle did not have standing to contest search of vehicle).

Plaintiff has not demonstrated a legal ownership or possessory interest in the vehicle.[5] As such, Plaintiff did not have a legitimate expectation of privacy in the vehicle, and would not have standing to challenge the search or seizure of the vehicle on Fourth Amendment grounds.[6]

---

[5] Even if Plaintiff did have a legitimate expectation of privacy in the car, qualified immunity would apply. Because of the need to tow the vehicle from the scene due to its lack of insurance and unknown ownership status, an objectively reasonable officer would have believed Defendant Harris's actions were constitutionally permissible.

[6] Although Fourth Amendment standing was not raised by Defendants, the Court conducts a standing analysis as a prerequisite to the Fourth Amendment inquiry regarding the vehicle. Finding that Plaintiff lacked standing renders moot any arguments that his constitutional rights were violated.

See <u>Smith v. Garrett</u>, 586 F. Supp. 517, 525 (N.D.W. Va. 1984) (observing that plaintiff bringing § 1983 challenge under Fourth Amendment has same burden of criminal defendant to show standing to contest search). Thus, Defendant Harris is entitled to judgment as a matter of law on all of Plaintiff's Fourth Amendment claims regarding the vehicle. Likewise, Defendants are entitled to summary judgment as to Plaintiff's deprivation of property claim because Defendants' summary judgment evidence demonstrated Plaintiff did not own the car.

5. Plaintiff's Equal Protection Clause Discrimination Claim[7]

Plaintiff alleged that "under the 'totality of the circumstances' " Defendant Harris engaged in racial discrimination in violation of the Fourteenth Amendment's Equal Protection Clause in "arresting, searching, seizing, and detaining" Plaintiff. (Pl.'s Compl. at 11 [Doc. #3].) "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." <u>Morrison v. Garraghty</u>, 239 F.3d 648, 654 (4th Cir. 2001). Here, Plaintiff provided no evidence suggesting that he was treated differently from others similarly situated, which is the fundamental element of a discrimination claim under the Fourteenth Amendment. Absent evidence that an objectively reasonable officer in Defendant Harris's position would have known such conduct amounted to differential treatment in violation of Plaintiff's constitutional rights, qualified immunity applies and

_____

[7] Plaintiff listed sixteen causes of action in the preliminary statement of his Amended Complaint, the last of which is "Discrimination." However, the body of Plaintiff's Amended Complaint did not actually contain a sixteenth claim. In liberally construing Plaintiff's pleadings, the Court will assume Plaintiff intended to maintain his Fourteenth Amendment discrimination claim as alleged in his original Complaint. (Pl.'s Compl. at 11 [Doc. #3].)

Defendant Harris is entitled to judgment as a matter of law.

6.      Plaintiff's First Amendment Retaliation Claim

Plaintiff contended that Defendants intentionally made a false allegation to the Hoke County District Attorney in retaliation for Plaintiff filing the present action. Plaintiff appeared to assert a First Amendment claim based on this alleged retaliatory act. A successful First Amendment retaliation claim requires proof of three elements: (1) the plaintiff's speech in question was protected, (2) "the defendant's alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech;" and (3) "that a causal relationship exists between [plaintiff's] speech and the defendant's retaliatory action." Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685–86 (4th Cir. 2000).

Plaintiff provided a transcript from a court proceeding unrelated to this matter in which an Assistant District Attorney informed the sentencing court that the Rockingham Police Department believed Plaintiff had "fabricated an offense against law enforcement officers," by submitting Plaintiff's video as evidence. (Pl.'s First Motion to Amend [Doc. #48-1].) Plaintiff alleged that this "intentional false allegation made to the Hoke County District Attorney's office . . . was done with malicious motive to punish plaintiff for filing this action against them." (Pl.'s Am. Compl. at 30 [Doc. #111].) As such, Plaintiff seemed to allege that the retaliatory action at issue was informing the Hoke County Assistant District Attorney of the Rockingham Police Department's concerns that Plaintiff was fabricating evidence.

Again, Defendant Harris is protected by qualified immunity in this instance because a reasonable officer would not conclude, based on the totality of the circumstances, that

Defendant Harris acted in contravention of Plaintiff's constitutional rights. To the extent that Plaintiff suggests that Defendant Harris may have informed the Hoke County Assistant District Attorney of concerns about Plaintiff's video, such conduct on Defendant Harris's part does not violate a clearly established constitutional right. An objectively reasonable police officer would believe it was constitutionally permissible to inform a district attorney of what Defendants believe to be fraudulent activity aimed at the police department. Because of Plaintiff's failure to provide evidence showing the actions of Defendant Harris in this regard violate a clearly established right, qualified immunity protects Defendant Harris from this claim.

### 7. Plaintiff's § 1985 Conspiracy Claim

Plaintiff alleged that Defendants deliberately, wantonly, and maliciously conspired to violate Plaintiff's statutory civil rights. The allegations of conspiracy appear to rest on the same constitutional claims discussed above. A § 1985(3) conspiracy claim consists of five elements:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

Simmons v. Poe, 47 F.3d 1370, 1376 (4th Cir. 1995). Plaintiff has provided no proof of any of these elements. Moreover, to the extent the Court has found that no constitutional violations have occurred, Plaintiff cannot show that an act of Defendants injured Plaintiff in depriving him of equal protection under the law. Because the facts of this case do not support a § 1985 claim,

Defendants are entitled to judgment as a matter of law on this matter.[8]

C.    Plaintiff's North Carolina State Tort Claims[9]

Plaintiff's state law claims for assault and battery, malicious prosecution, false arrest, false imprisonment, intentional infliction of emotional distress, and negligence mirror Plaintiff's federal claims. Defendant Harris argues that under North Carolina state law, he is protected from liability for any claims arising out of performance of his discretionary work duties because Defendant Harris's conduct was not malicious or corrupt. Under North Carolina state law, police officers are entitled to public officers' immunity unless the officer acted with malice or corruption. Bailey v. Kennedy, 349 F.3d 731, 742 (4th Cir. 2003). This analysis mirrors the qualified immunity analysis regarding whether a police officer's conduct violated a clearly established right for qualified immunity purposes. See id.; Cooper v. Sheehan, 735 F.3d 153, 160 (4th Cir. 2013). "[P]ublic officers' immunity . . . is unavailable to officers who violate clearly established rights because an officer acts with malice when he 'does that which a man of

---

[8] To the extent Plaintiff intended to assert a common law conspiracy claim against Defendants, (see Pl.'s Compl. at 2 [Doc. #3]), such a claim would fail for lack of evidence of any agreement or resulting damages to Plaintiff. E.g. Jackson v. Blue Dolphin Comm'cns of North Carolina, LLC, 226 F. Supp. 2d 785, 791 (W.D.N.C. 2002).

[9] Although not clearly articulated in his Amended Complaint [Doc. #111], Plaintiff alleged in his original Complaint [Doc. #3] that Defendant Harris's actions in arresting, searching, and seizing Plaintiff violated Article I, Section 19 of the North Carolina Constitution. However, "a direct cause of action under the State Constitution is permitted only 'in the absence of an adequate state remedy.'" Davis v. Town of Southern Pines, 116 N.C. App. 663, 675, 449 S.E.2d 240, 247 (1994) (quoting Corum v. Univ. of North Carolina, 330 N.C. 761, 782, 413 S.E.2d 276, 289 (1992)). Plaintiff has an adequate state remedy for any alleged injury; "[p]laintiff's constitutional right to not be unlawfully imprisoned and deprived of [his] liberty are adequately protected by [his] common law claim of false imprisonment." Id. at 675, 449 S.E.2d at 248.

reasonable intelligence would have known to be contrary to his duty.' " Bailey, 349 F.3d at 742 (quoting Grad v. Kaasa, 312 N.C. 310, 321 S.E.2d 888, 890 (1984)); Cooper, 735 F.3d at 160.

Plaintiff has provided no evidence of malice or corruption on the part of Defendant Harris, and as discussed above, the evidence in support of Defendants' Motion for Summary Judgment demonstrates that Defendant Harris's conduct did not violate any clearly established constitutional right. Because Defendant Harris acted as an objectively reasonable officer would have, without malice or corruption, public officers' immunity entitles him to judgment as a matter of law on all of Plaintiff's state law claims.

To the extent Plaintiff asserts state claims against Defendant Rockingham, governmental immunity would bar such claims. "Governmental immunity shields municipalities and the officers or employees thereof sued in their official capacities from suits based on torts committed while performing a governmental function." Houpe v. City of Statesville, 128 N.C. App. 334, 340–41, 497 S.E.2d 82, 87 (1998); see Pettiford v. City of Greensboro, 556 F. Supp. 2d 512, 524–25 (M.D.N.C. 2008). Police services and the requisite training and supervision by the municipality are considered governmental functions under North Carolina law. Houpe, 128 N.C. App. at 340–41, 497 S.E.2d at 87. Although not raised by Defendants, the Court observes that governmental immunity applies in suits against governmental entities unless the plaintiff alleges a waiver of immunity in his complaint. Owen v. Haywood Cnty., 205 N.C. App. 456, 459, 697 S.E.2d 357, 359 (2010); Paquette v. Cnty. of Durham, 155 N.C. App. 415, 419, 573 S.E.2d 715, 717 (2002) ("In order to overcome a defense of governmental immunity, the complaint must specifically allege a waiver of governmental immunity."); Morrison-Tiffin v.

Hampton, 117 N.C. App. 494, 503–04, 451 S.E.2d 650, 657–58 (1995). Here, Plaintiff failed to allege any waiver of governmental immunity and has provided no evidence of such a waiver. Accordingly, governmental immunity bars Plaintiff's state claims against Defendant Rockingham, and Defendant Rockingham is entitled to judgment as a matter of law on these matters.

IV.   CONCLUSION

As no genuine issue of material fact remains, summary judgment in this case is proper. Plaintiff did not oppose the present motion for summary judgment and his limited evidence does not suffice to create a genuine issue of material fact so as to preclude judgment as a matter of law. For the reasons discussed above, Defendants' Renewed Motion for Summary Judgment is GRANTED as to all of Plaintiff's claims.

IT IS THEREFORE ORDERED that Defendants' Renewed Motion for Summary Judgment [Doc. #114] is hereby GRANTED, and this matter is hereby DISMISSED. A Judgment consistent with this Memorandum Opinion and Order will be filed contemporaneously herewith.

This the 14th day of October, 2014.


United States District Judge